**No. 25-30556**

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

Brandon Holloway,

Plaintiff - Appellant

v.

Procter & Gamble Manufacturing Company,

Defendant - Appellee

---

**On Appeal from**
United States District Court for the Western District of Louisiana
1:23-cv-01725

---

**BRIEF OF APPELLANT BRANDON HOLLOWAY**

---

Submitted By:
Allison A. Jones, T.A.
Downer, Jones, Marino & Wilhite, L.L.C.
401 Market Street, Suite 1250
Shreveport, LA 71101
(318) 213-4444
Fax (318) 213-4445

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| Proctor & Gamble Manufacturing Company | Michael Brian Taylor Adrienne Michelle Wood Jackson and Lewis New Orleans, LA. |

| Appellants: | Counsel for Appellants: |
|---|---|
| Brandon Holloway | Allison Jones Downer, Jones, Marino & Wilhite, L.L.C. Shreveport, LA |

SO CERTIFIED, this the 12th day of December, 2025.

*/s/Allison Anne Jones*
Allison A. Jones
Counsel for Plaintiff-Appellant

ii

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 5th Circuit Rule 28.2.4, Appellant respectfully suggests that oral argument is necessary to address (1) several issues that critically impact not only the resolution of this lawsuit but also the consideration of the appropriate burdens of parties and the use of credibility determinations in the summary judgment process in employment discrimination cases and (2) the continued application of the use of the burden shifting mechanism of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) at the summary judgment stage.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ..........................................ii

STATEMENT REGARDING ORAL ARGUMENT ............................... iii

TABLE OF CONTENTS .......................................................................iv

TABLE OF AUTHORITIES ................................................................... 1

JURISDICTIONAL STATEMENT .........................................................6

STATEMENT OF THE ISSUES............................................................7

STATEMENT OF THE CASE ...............................................................8

   I.   Statement of the Facts............................................................8

      A.   Plaintiff was Hired and Trained by Defendant. .......................8

      B.   Plaintiff Engaged in Protected Activity. ...................................8

      C.   Plaintiff was Terminated from His Job. ..................................9

   II.  Procedural Posture.............................................................10

SUMMARY OF THE ARGUMENT ......................................................12

ARGUMENT .....................................................................................14

   I.   Standard of Review. ..............................................................14

   II.  The *McDonnell Douglas* Framework.............................................15

III. The District Court Committed Multiple Procedural Errors on

Summary Judgment...................................................................20

A.    The District Court Erred in Not Requiring Defendant to

Satisfy Its Often Overlooked Initial Burden on Summary

Judgment. ...............................................................................20

1.    Federal Rule of Civil Procedure 56(a) Has Been

Continuously Ignored by District Courts in Title VII

Cases..............................................................................20

2.    Defendant Failed to Carry Its Initial Rule 56(a) Burden

and the District Court Erred in Granting Summary

Judgment.......................................................................25

B.    The District Court Discrediting the Holloway Declaration

Runs Afoul of Well-Established Summary Judgment

Procedure. .............................................................................27

IV. *McDonnell Douglas* Analyis Compels Reversal as Genuine

Issues of Fact Exist ....................................................................32

A.    The District Court Properly Found that Plaintiff Met His

Prima Facie Case for Race Discrimination and Retaliation

for Opposing the Same. .........................................................32

B.    The District Court Erred When if Found that Defendant Had Satisfied Its Burden of Production With Competent Evidence...................................................................................34

C.    Genuine Issues of Fact Infect the Evidence Supporting Defendant's Proffered Legitimate Business Reason for Terminating Plaintiff. ...........................................................34

    1.    Alleged Improper Credit Card Use......................................38

    2.    SAFE Procurement Procedures. ..........................................40

V.    The District Court Erred When it Dismissed Plaintiff's State Whistleblower Claim...................................................................43

CONCLUSION ..............................................................................47

CERTIFICATE OF SERVICE.........................................................48

CERTIFICATE OF COMPLIANCE...................................................49

# TABLE OF AUTHORITIES

**CASES**

*Aidickes v. S.H. Kress & Co.*, 398 U.S. 144, 159,-60 (1970) ...................20

*Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 145 S.Ct.

1540, 221 L.Ed.2d 929 (2025)...................................................... 17, 18

*Anderson vs. Liberty Lobby*, 477 U.S. 242, 251-52 (1986) ......................14

*Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 403 (5th

Cir. 2001) ...................................................................................35

*Bauer v. Albemarle Corp.*, 169 F.3d 962 (5th Cir. 1999) .......................35

*Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, Inc., 482 F.3d

4082 (5th Cir. 2007) .........................................................................36

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).....................22, 23, 24

*Dall./Fort Worth Int'l Airport Bd. v. INet Airport Sys., Inc.*,

819 F.3d 245 n.14 (5th Cir. 2016) ........................................................30

*Desert Palace, Inc. v. Costa*, 539 U.S. 90  (2003) ..................................37

*Fahim v. Marriott Hotel Servs.*, 551 F.3d 344 (5th Cir. 2008) ...............36

*Fiest v. Louisiana, Department of Justice, Office of Attorney

General*, 730 F.3d 450, 454 (5th Cir. 2103) ..........................................37

*Guzman v. Allstate Assurance Co.*, 18 F.4th 157 (5th Cir. 2021) ....................................................................................... 29, 30

*Hagden v. Brinker Tex*, 102 F.4th 692 (5th Cir. 2025) ............................... 35

*John v. Board of Trustee for State Colleges*, 757 F.2d 698, 708 (5th Cir. 1985) .......................................................................................... 21

*Kariuki v. Tarango*, 709 F.3d 495 (5th Cir. 2013) ................................... 30

*Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288 (5th Cir. 2020) ....................................................................................................... 30

*Lindsey v. Prive Corp.*, 987 F.2d 324 (5th Cir. 1983) ......................... 42, 43

*Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994) .............. 21, 22, 23

*Martinez v. El Paso County*, 710 F.2d 1102 n. 2 (5th Cir. 1983) ................................................................................................................ 42

*Matsushita Elec. Indus. Co. vs. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ............................................................................................. 14

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ............................................................. passim

*Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir. 1985) ............................ 42

Mota v. Univ. of Tex. Houston Health Sci. Ctr., 261 F.3d 512 (5th Cir. 2001) ............................................................................................. 33

*Patterson v. McLean Credit Union,* 419 U.S. 164 (1989)........................41

*Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133 (2000) ............36, 37

*Rowe v. General Motors Corp.,* 472 F.2d 348 (5th Cir. 1972) .................42

*SCA Promotions, Inc. v. Yahoo!, Inc.,* 868 F.3d 378, 381 (5th Cir. 2017) .............................................................................................14

*Septimus v. University of Houston,* 399 F.3d 601 (5th Cir. 2005) ...............................................................................................32

*Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248 (1981) ......16, 24, 33

**STATUTES**

La. R.S. 23:967............................................................................43, 45, 46

La. R.S. 23:967(A)(3) ...............................................................................43

**OTHER AUTHORITIES**

28 U.S.C. § 1291 ........................................................................................6

28 U.S.C. § 1331 ........................................................................................6

28 U.S.C. § 1367 ........................................................................................6

42 U.S.C. § 2000(e)-3(a).........................................................................15

42 U.S.C. § 2000e ......................................................................................6

42 U.S.C. § 2000e-2(a)(1) .......................................................................15

42 U.S.C. § 2000e-2(m) ...........................................................................37

42 U.S.C. §1981 ....................................................................16

Amy Myrick, Robert L. Nelson & Laura Beth Nielsen, *Race and Representation: Racial Disparities in Legal Representation for Employment Civil Rights Plaintiffs,* 15 N.Y.U. J. LEGIS. & PUB. POL'Y 705, 710 n.16 (2012).......................21

Carlisa Carson, *Scrap McDonnell Douglas and Its Burden Shifting!,* 101 Nebraska Law Review, Issue 2, Article 8 (2023) ....................................................................15

Kevin M. Clermont & Stewart J. Schwab, *Employment: Discrimination Plaintiffs in Federal Court: From Bad to Worse?,* 3 HARV. L. & POL'Y REV. 103, 131 (2009) ...........................21

Kevin M. Clermont, *Litigation Realities Redux,* 84 NOTRE DAME L. REV. 1919, 1966 (2009) ....................................................21

Ruth Colker, *The Americans with Disabilities Act: A Windfall for Defendants,* 34 HARV. C.R.-C.L. L. REV. 99, 108 (1999)..............21

Sandra F. Sperino, *Irreconcilable: McDonnell Douglas and Summary Judgment,* 102 N.C. L. Rev. 459 (2024)..............................15

Wendy Parker, *Lessons in Losing: Race Discrimination in Employment,* 81 NOTRE DAME L. REV. 889, 891-92 (2006) ..................................................................................21

William W. Schwarzer, Alan Hirsch & Edward Sussman, *The Analysis and Decision of Summary Judgment Motions 47 (Fed. Judicial Ctr. 1991)* .....................................................23

**RULES**

5th Circuit Rule 28.2.4 .......................................................... iii

Fed. R. Civ. Proc. 56 .............................................. 21, 23, 30

Fed. R. Civ. Proc. 56(a) ................................................. passim

Fed. R. Civ. Proc. 56(c) ........................................................ 14

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant, Brandon Holloway ("Plaintiff" or "Holloway"), brought this lawsuit for damages for purposeful discrimination against Plaintiff based upon his race and/or in retaliation for opposition to discrimination in violation of Title VII of the Civil Rights Act, as amended, codified under 42 U.S.C. § 2000e. Plaintiff also alleged state law claims of whistleblower retaliation and defamation.[1] The District Court had federal question jurisdiction over the case pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

On August 27, 2025, the District Court granted Defendant's motion for summary judgment dismissing all of Plaintiff's claims. ROA.344, 354. Plaintiff filed a Notice of Appeal on September 27, 2025. ROA.355. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

---

[1] Plaintiff does not appeal the District Court's decision regarding the Plaintiff's state defamation law claims.

## STATEMENT OF THE ISSUES

1.     Whether the District Court erred when it found that Defendant had produced sufficient evidence under Federal Rule of Civil Procedure 56(a) for consideration of summary judgment.

2.     Whether Supreme Court jurisprudence requires this Court to reassess and reject its use of the *McDonnell Douglas* burden-shifting framework when deciding Title VII claims on summary judgment.

3.     Whether the District Court improperly weighed evidence when it found that Plaintiff's declaration was not sufficient evidence standing alone to create a genuine issue of fact as to pretext, was not worthy of credence and, thus, insufficient to defeat summary judgment.

4.     Whether Defendant's use of genuinely disputed reasons for terminating Plaintiff requires summary judgment to be reversed.

5.     Whether the District Court erred when it granted summary judgment on Plaintiff's state law whistleblower claim.

## STATEMENT OF THE CASE

### I.    Statement of the Facts.

### A.    Plaintiff was Hired and Trained by Defendant.

Plaintiff, Mr. Holloway, a white male, started working with the Defendant on or around January 16, 2007, in the position of Raw Materials Specialist. Plaintiff was later promoted to Business Environmental Contact, and his job duties included, but were not limited to, stormwater permitting and compliance, solid waste management, permitting and compliance of air and sewer, all of which required compliance with federal and state regulations. Up until the events described herein, during the entire tenure of his employment with the Defendant, Plaintiff had exemplary performance evaluations. ROA.61.

### B.    Plaintiff Engaged in Protected Activity.

During the time period of September 29, 2022 – December 6, 2022, Plaintiff disclosed to the Defendant acts which violated federal and state laws, and he refused to participate in the same. Specifically on three occasions with the last meeting occurring on or about November 22, 2022, Plaintiff disclosed to Will Morgan, Plaintiff's Health, Safety and Environment Manager ("Mr. Morgan"), certain reporting illegalities with

8

respect to federal and state offices of transportation and compliance with federal and state regulations, including, but not limited to, 49 CFR Part 172, subpart H and applicable state law, and he further reported irregularities with the execution of hazardous waste manifest forms required under these and other federal and state laws. ROA.61.

During this same time period, Plaintiff further made a complaint of race discrimination to Mr. Morgan, specifically alleging that he was being treated differently than his similarly situated non-white comparators: Rodney Antoine (Black) ("Mr. Antoine"), Kris Rivera (Hispanic) ("Mr. Rivera"), Mike Jones (Black) ("Mr. Jones"), Jordan Dorsey (Black) ("Mr. Dorsey"), Ronnie Gypin (Native American) ("Mr. Gypin"), and Karen Franklin (Black) ("Ms. Franklin). With the possible exception of Ms. Franklin, each of these non-white comparators were supervised by Mr. Larry Wright, who was also Plaintiff's manager at the time of the termination of Plaintiff's employment. ROA.62.

## C.   Plaintiff was Terminated from His Job.

Within days of Plaintiff's last report on November 22, 2022, of the federal and state law violations, his refusal to participate in the same and his complaints of race discrimination, Plaintiff was retaliated

9

against by Defendant. This retaliation culminated in the termination of his employment on December 6, 2022. ROA.62. The stated reason for the termination of Plaintiff's employment was (1) misuse of credit cards and (2) violation of SAFE procurement policies. ROA.62. Plaintiff filed this lawsuit contending that the stated reason for the termination of his employment was false and pretextual for discrimination and retaliation for his opposition to the same. ROA.60.

For purposes of this summary judgment, certain critical facts are undisputed. It is undisputed that Plaintiff is a white, male. It is further undisputed that the administrative pre-requisites for this lawsuit are met as: (1) Plaintiff timely filed a charge with the Equal Employment Opportunity Commission, (2) received his Notice of Right to Sue on January 24, 2024, and (3) timely filed the Complaint initiating this lawsuit. ROA.214.

## II.    Procedural Posture.

Defendant moved for summary judgment on Plaintiff's Title VII race discrimination claim, state law whistleblower claim and state claims of defamation ("Defendant's Motion"). ROA.125-203. Defendant did not move for summary judgment on Plaintiff's retaliation claim. ROA.125-

203. Plaintiff filed his opposition noting, among other things, that Defendant had not moved for summary judgment on his claim of retaliation ("First Opposition"). ROA.205-286. Defendant attempted to cure this failure in a reply brief. ROA.287-293. In response, the District Court entered a subsequent order under Federal Rule of Civil Procedure 59(f) for a supplemental briefing regarding Plaintiff's Title VII retaliation claim. ROA.294. Plaintiff filed a second and supplemental opposition ("Second Opposition"). ROA.295-302. Defendant was allowed to file a reply to the same. ROA.303-309. In both the First Opposition and the Second Opposition and germane to this appeal, Plaintiff attached his declaration which was supplemental to his deposition, and which discussed where the exhibits relied upon by Defendant corroborated Plaintiff's testimony and where the same were in conflict. ("Holloway Declaration"). ROA.278-284.

The District Court granted Defendant's Motion. ROA.342-353. The District Court's ruling on Defendant's Motion (the "Ruling") found that Plaintiff has established a prima facie case for both his race and retaliation claims. The Ruling, then, surprisingly wholly discredited the Holloway Declaration finding that "without evidence to support his self-

serving claims [referencing the Holloway Declaration] Holloway cannot carry his burden of proving the reasons articulated by P&G [Defendant] for his termination were mere pretext." ROA.348. In other words, the District Court accepted the contradictory evidence submitted by Defendant via declaration and documents (which contradictory declarations do not even address the proffered reasons for the termination of Plaintiff's employment) over the Holloway Declaration. After discrediting the Holloway Declaration, the District Court determined that, though Plaintiff had established a prima facie case for both his race and retaliation claims, Plaintiff had not created a genuine issue of fact regarding the pretextual nature of the proffered legitimate business reason, dismissing Plaintiff's entire case with prejudice. ROA.342-354. From this Ruling, Plaintiff took the instant appeal.

## SUMMARY OF THE ARGUMENT

This matter turns on the appropriate burdens for summary judgment. Plaintiff contends that Defendant did not meet its initial burden under Federal Rule of Civil Procedure 56(a), and that summary judgment is inappropriate. Assuming arguendo that Defendant did meet its FRCP 56(a) burden, the District Court improperly engaged in

12

credibility determinations when it applied the judicially created burden shifting mechanism of the *McDonnell Douglas Corp. v Green*, 411 U.S. 792, 802-807 (1973) as such burden shifting necessarily requires credibility determinations which are irreconcilable with summary judgment standards. Alternatively, if such burden shifting mechanism was appropriately used, here, conflicting evidence and credibility determinations exist such that summary judgment should be denied. Plaintiff submits that the District Court erred when it failed to properly credit his evidence filed in opposition to Defendant's Motion. Because the District Court found Plaintiff Holloway's Declaration, standing alone, could not defeat the motion for summary judgment, the District Court weighed the evidence which is wholly impermissible on summary judgment.[2] Because the District Court improperly weighed evidence, its analysis of the pretext portion of Plaintiff's race discrimination and retaliation claims was necessarily flawed. When properly applying the

---

[2] The District Court clearly felt strained regarding refraining from making credibility determination. For example, the District Court stated on page 7 of the Ruling regarding Plaintiff's argument that "the evidence suggest that Morgan's version of events is more accurate." While the District Court begrudgingly still found a genuine issue of a fact given Plaintiff's testimony, the inclusion of this phrase regarding the supposed accuracy of one the testimony of one witness over another demonstrates that the District Court was inclined to make credibility calls. ROA.348-349.

13

summary judgment procedure, this Court will find that genuine issues of material facts exist surrounding Defendant's proffered reasons for terminating Plaintiff.

Thus, this Court should reverse the District Court and remand for trial.

## ARGUMENT

### I.   Standard of Review.

On appeal, the District Court's grant of summary judgment is reviewed *de novo* using the same standard applicable to the District Court. *SCA Promotions, Inc. v. Yahoo!, Inc.*, 868 F.3d 378, 381 (5th Cir. 2017). For summary judgment to be proper there must be no genuine issue of material fact. Fed. R. Civ. Proc. 56(c). Further, the court must construe all evidence and reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. vs. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Where there exists a sufficient disagreement to require submission to a jury, summary judgment is not proper. *Anderson vs. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).

## II.    The *McDonnell Douglas* Framework.

Although the District Court is arguably bound as a lower court to apply the *McDonnell Douglas*[3] framework to this matter, the framework's use has been called into question by many legal commentators[4] and by at least two (2) Supreme Court Justices.

Federal employment discrimination claims for race and retaliation are grounded in the statutory language of Title VII of the Civil Rights Act of 1964, as amended in 1991. Title VII of the Civil Rights Act prohibits an employer from refusing to hire or to discharge "any individual, or otherwise to discriminate against any individual" based on his race. 42 U.S.C. § 2000e-2(a)(1). Title VII also further states that "[i]t shall be an unlawful  employment practice for an employer to discriminate against any of his employees…because he has made a charge" under Title VII. 42 U.S.C. § 2000(e)-3(a). The purpose of the Civil Rights Act is clear: the rights afforded by the United States apply to all

---

[3]    *McDonnell Douglas Corp. v. Green*, 411 U. S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

[4]    See, e.g., Sandra F. Sperino, *Irreconcilable: McDonnell Douglas and Summary Judgment*, 102 N.C. L. Rev. 459 (2024); Carlisa Carson, *Scrap McDonnell Douglas and Its Burden Shifting!*, 101 Nebraska Law Review, Issue 2, Article 8 (2023).

persons in the United States, and no person can impair them. *See* 42 U.S.C. § 1981. Plaintiff has brought both types of claims.

Unfortunately, district courts do not use the text of this federal discrimination statute when deciding summary judgment, instead, relying primarily on the *McDonnell Douglas* three-part burden shifting framework. The judge begins the *McDonnell Douglas* analysis at the first step which is often called the prima facie case. After the plaintiff establishes this prima facie case, a rebuttable presumption of discrimination arises, and the burden shifts to the employer to articulate, with evidence, some legitimate, non-discriminatory reason for their acts, thereby rebutting the presumption. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256-57 (1981). Once the employer meets the burden of production under step two, the plaintiff can prevail by showing "that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 at 253.

When the Supreme Court created the *McDonnell Douglas* test, Title VII cases were not submitted to juries. In the *McDonnell Douglas* case, the Supreme Court reviewed factual determinations by the district judge

after a bench trial which necessarily requires a district judge to weigh competing evidence. It was not until 1991 that Title VII allowed jury trials. Today, the *McDonnell Douglas* test is now used primarily for summary judgments. Yet, courts have never fully grappled with whether the second step of this *McDonnell Douglas* test violates summary judgment standards by requiring judges to credit the defendant's evidence and to give that evidence a certain weight and place in the court's analysis. Further, requiring a defendant to meet a burden of production in step two, but then requiring a plaintiff to meet a burden of persuasion at step three upends summary judgment procedure by forcing the non-moving party to meet a higher burden than non-moving plaintiffs in other federal court cases. Plaintiff submits that this crediting of a proffered reason at the second step is incompatible with the summary judgment standard.

At least two justices of the Supreme Court have acknowledged the confusion created by *McDonnell Douglas'* burden shifting. Recently, the Supreme Court decided the case of *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 306, 145 S.Ct. 1540, 1544, 221 L.Ed.2d 929, 934 (2025),

17

overruling the Sixth Circuit's "background circumstances" which the unanimous Supreme Court found to be atextual to Title VII.

In *Ames*, the Supreme Court assumed without deciding that the *McDonnell-Douglas* framework applied at the summary judgment stage, 605 U.S. at 308 n.2, but germane to this matter is Justice Thomas's forceful concurrence, joined by Justice Gorsuch, which questions the continued use of the *McDonnell Douglas* framework. Justice Thomas begins by noting a reoccurring issue in discrimination lawsuits—Judge-made doctrines—which "have a tendency to distort the underlying statutory text, impose unnecessary burdens on litigants, and cause confusion for courts." *Id.*, 605 U.S. at 313 (Thomas, J., concurring). To that end, Justice Thomas believes that in the right case, the Supreme Court should reconsider whether the *McDonnell Douglas* framework is a workable and useful evidentiary tool. *Id.*

Justice Thomas's reasoning is sound. The *McDonnell Douglas* framework is a judge-made evidentiary "tool," which was originally developed for courts to use in a bench trial. *Id.* at 319. The framework was "made out of whole cloth" and "[i]ts contours have no basis in the text of Title VII or any other source of law." *Id.* at 320. In fact, it appears the

Supreme Court has never attempted to justify its use through textual grounds. *Id*. Moreover, and critical to this case, the Supreme Court has never considered—much less held—that the *McDonnell Douglas* framework is an appropriate tool for summary judgment. *Id*. 320-21. Thus, Justice Thomas concludes that "litigants and lower courts are free to proceed without the *McDonnell Douglas* framework" because the Supreme "Court has never required anyone to use it." *Id*. at 326.

The learned Justice's reasoning is obvious: "the framework is incompatible with the summary-judgment standard; it fails to encompass the various ways in which a plaintiff could prove his claim; it requires courts to maintain artificial distinctions between direct and circumstantial evidence; and it has created outsized judicial confusion." *Id*. at 322. When courts invent Judge-made doctrines, such as the *McDonnell Douglas* framework, the lack of underlying legal authority necessarily creates a dearth of ways in which doctrinal ambiguities can be resolved. *Id*. at 315. Thus, this matter presents a vehicle where this Court may reconsider its long-standing, confusing, and speciously applied precedent and unburden this Circuit of the atextual, apocryphal use of the *McDonnell Douglas* framework on summary judgment.

19

Nevertheless, until the jurisprudential tragedy of this burden shifting scheme is corrected, Plaintiff submits that, even then, the District Court's Ruling should be reversed.

## III.   The District Court Committed Multiple Procedural Errors on Summary Judgment.

### A.   The District Court Erred in Not Requiring Defendant to Satisfy Its Often Overlooked Initial Burden on Summary Judgment.

#### 1.   Federal Rule of Civil Procedure 56(a) Has Been Continuously Ignored by District Courts in Title VII Cases.

Summary judgment is only appropriate "if the movant shows that there is no genuine issue as to any material fact." That initial showing must come from the movant itself – with evidence. As the Supreme Court explained in *Aidickes v. S.H. Kress & Co.*, 398 U.S. 144, 159,-60 (1970), the movant "bears the burden of showing the absence of any genuine issue of fact," and "summary judgment must be denied even if no opposing evidentiary matter is presented" when the burden is not met. This Court has adopted that rule without qualification: summary judgment cannot be granted by default even if there is a complete failure to respond. The movant has the burden of establishing the absence of a genuine issue of material fact before the non-movant is even required to

respond. *John v. Board of Trustee for State Colleges*, 757 F.2d 698, 708 (5th Cir. 1985). "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the non-movant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Notwithstanding this law, at the district court level, summary judgment has sadly become so routinely granted in federal courts that some defendants believe they need only invoke the phrase "plaintiff cannot prove his case" and offer a vacuous reason for their actions to trigger near-automatic dismissal. Scholars have offered various accounts of why this happens, including docket pressures and published case law that focuses on grants of summary judgment.[5] This mechanical approach has produced a pattern of barebones motions, thin on facts, heavy on conclusions, designed not to meet the moving party's burden, but to shift it prematurely onto the plaintiff. The result is a distortion of Rule 56:

---

[5]     *See, e.g.,* Amy Myrick, Robert L. Nelson & Laura Beth Nielsen, *Race and Representation: Racial Disparities in Legal Representation for Employment Civil Rights Plaintiffs,* 15 N.Y.U. J. LEGIS. & PUB. POL'Y 705, 710 n.16 (2012) (discussing ways employment discrimination claims fare worse than other claims); Kevin M. Clermont & Stewart J. Schwab, *Employment: Discrimination Plaintiffs in Federal Court: From Bad to Worse?,* 3 HARV. L. & POL'Y REV. 103, 131 (2009) (discussing how appellate court reversals favor employers); Kevin M. Clermont, *Litigation Realities Redux,* 84 NOTRE DAME L. REV. 1919, 1966 (2009) (discussing empirical studies about loss rates in discrimination cases); Wendy Parker, *Lessons in Losing: Race Discrimination in Employment,* 81 NOTRE DAME L. REV. 889, 891-92 (2006) (summarizing empirical results about race discrimination claims); Ruth Colker, *The Americans with Disabilities Act: A Windfall for Defendants,* 34 HARV. C.R.-C.L. L. REV. 99, 108 (1999) (discussing win rates for ADA plaintiffs).

defendants rely on the Court to comb through the plaintiff's case and make evidentiary judgments before the movant has even met the threshold established in *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). This distortion does more than just invert the proper order of analysis; it prematurely forces the plaintiff to justify his entire case to the Court without legal cause. That is not how summary judgment is supposed to work. The burden remains squarely with the moving party to affirmatively demonstrate, ***with competent evidence,*** that there are no genuine disputes of material facts. Until that burden is met, the Court should not, indeed, it cannot require the plaintiff to marshal his evidence or defend the merits of his claims.

Federal district court judges have long recognized that some summary judgment motions lack merit on their face and should be rejected without requiring the nonmovant to incur the time and cost of a formal opposition. As one influential judicial guide explains:

> On occasion, motions are made whose lack of merit is apparent on their face. The cost of contesting such a motion can be avoided if judges first subject all motions to summary review to determine whether they sufficiently meet the facial test to call for a response. Without devoting much time, the experienced judge can quickly form an impression whether

22

the motion should be denied as clearly without merit or deferred as premature (when, for example, critical discovery is incomplete).[6]

Though published in 1991, this guidance remains relevant. It reflects the fundamental logic of Rule 56: that the burden lies first and firmly with the movant to justify the motion. Recent doctrinal developments have not displaced this principle but rather reinforced it, most notably in cases like *Celotex* and *Little*, which reiterate that until the movant meets its burden, the plaintiff bears no duty to respond. Courts have too often drifted from this foundational sequence, allowing conclusory or legally hollow motions to proceed to full evidentiary contests without first requiring a showing sufficient to shift the burden. That drift imposes unnecessary cost and procedural inequity, precisely what Rule 56 was designed to avoid. Simply put, Rule 56 does not authorize courts to evaluate the sufficiency of the nonmovant's evidence unless and until the moving party has first met its burden of production to show that no genuine issue of material fact exists. Until that burden

---

[6]    William W. Schwarzer, Alan Hirsch & Edward Sussman, *The Analysis and Decision of Summary Judgment Motions 47 (Fed. Judicial Ctr. 1991).*

is satisfied, the plaintiff should never be called upon to defend the merits of his claims.

For employment cases the results have been disastrous for plaintiffs. The drift of federal courts to ignore the burden the moving party bears, combined with the jurisprudentially created *McDonnell Douglas* burden shifting scheme, has largely gutted cases. For example, at step two of *McDonnell Douglas*, an employer is required to articulate, with evidence, a somewhat specific reason for why it acted in a way that is not facially discriminatory. *Burdine*, 450 U.S. 248, 256-57 (1981). The Defendant's burden is one of production, but it must be ***production supported by evidence***. Here, the District Court gave a brief nod to the requirements of *Celotex* and *Little*, but it utterly disregarded and never determined whether Defendant satisfied Rule 56(a). To carry the initial burden in a summary judgment proceeding the moving party cannot just declare that Plaintiff cannot prove his prima facie case and then tender a cursory, vaporous justification. ***It must provide evidence***. The moving party must direct the court's attention to specific factual deficiencies in one or more elements of the Plaintiff's cause of action. Here, Defendant failed to submit any evidence that would support the alleged articulated

24

legitimate business reason for the termination of Plaintiff's employment instead submitting no actual declaration testimony regarding the proffered legitimate business reason and attaching documents which did support Defendant's contention. Legal conclusions masquerading as facts, and briefing that rests on unauthenticated hearsay attachments combined with unproven conclusions, generalizations and mischaracterizations are not evidence.

**2. Defendant Failed to Carry Its Initial Rule 56(a) Burden and the District Court Erred in Granting Summary Judgment.**

Defendant Motion's alleges two reasons for the termination of Plaintiff's employment: (i) misuse of credit cards and (ii) violation of the SAFE procurement policy. ROA.132, 190-191. ***As evidence***, Defendant attaches two Declarations: (1) Declaration of Will Morgan ROA.178-179 and (2) Declaration of Bridget Anders. ROA.202-203. Neither Declaration addresses the proffered legitimate business reason for the termination of Plaintiff's employment. Therefore, neither Declaration is evidentiary support of the Defendant's Motion on the issue of pretext. Other documentation attached to Defendant's Motion, while arguably constituting a business record hearsay exception, was not properly

authenticated. But, even if such an objection were overlooked, and these documents are properly considered, these documents do not provide evidentiary support for a proffered legitimate business reason for termination of Plaintiff's employment – there is no evidence produced. In fact, the attachments produced do not come close. As it relates to the proffered legitimate business reason of misuse of credit card, the "investigatory report" attachment recommends only (1) removal and cancellation of credit cards, (2) removal from his BEC post and transfer to HDL PD shift, and (3) Policy Refresher Training on my learning for 100% of Employees. ROA.180-181.[7] Notably, the investigatory summary does not recommend termination of employment. ROA.181.

Likewise, the SAFE procurement issues are not supported by credible evidence. The one document submitted to support its position does not even identify Plaintiff or state in any way his involvement in alleged overbilling. ROA.188-189. Once again, the Declarations submitted by Defendant do not address this legitimate business reason proffered, and, thus, they cannot be considered.

---

[7]    The date and substance of this document corroborate Plaintiff's testimony that this matter did not become an issue until shortly after he engaged in protected activity.

Simply put, there is ***no evidence*** produced by Defendant to support its contention that Plaintiff's employment was terminated for a legitimate business reason that is not tainted by discriminatory or retaliatory motivations. As such, the District Court should never reach Plaintiff's evidentiary record until the moving party has done the work required of it. The Defendant must show that "there is no genuine issue as to any material fact." In this case, Defendant has not done so, and this Court should reverse and remand on this ground alone without needing to reach other issues pervading Defendant's Motion.

**B.    The District Court Discrediting the Holloway Declaration Runs Afoul of Well-Established Summary Judgment Procedure.**

In the Ruling, the District Court found that the Holloway Declaration was "self-serving" and implied that the same is not competent summary judgment evidence. ROA.347-348. Specifically, the District Court stated, "The only evidence in support of his [Plaintiff's] arguments are his own deposition testimony and declaration. There are no witness statements nor any other record evidence supporting his contentions that either the articulated reasons were not the actual reasons or that they may have been a reason behind his termination but

27

there were other discriminatory reasons." ROA.347. The District Court clearly erred when it failed to give proper consideration of the Holloway Declaration. Plaintiff does not need to have "other witness statements" or "other record evidence supporting his contentions."[8] Plaintiff's testimony alone can create a genuine issue of fact. As noted earlier in footnote 4, herein, the District Court clearly weighed evidence.[9]

Holloway's Declaration specifically addresses both stated reasons for termination of his employment: (1) misuse of credit cards, and (2) violation of the SAFE procurement policy. ROA.278-283. As noted in the Holloway Declaration the "alleged" misuse occurred in July, many months before the termination of his employment, did not become an issue until September after he had engaged in protected activity, and that Plaintiff Holloway had previously been told by Defendant Human Resource Manager, Kevin Hood that because Plaintiff was just being told that his understanding of the credit card policy was incorrect, and because Plaintiff had repaid the charges and was not in any current disciplinary counseling, termination of his employment was not

---

[8] In fact, Plaintiff relied upon his deposition testimony, his declaration and the fact that the documentary evidence relied upon by Defendants corroborated his testimony.

[9] See footnote 4.

warranted due to Defendant's progressive discipline policy. ROA.280. (paras. 8-10). As noted above, Defendant's own attachments to Defendant's Motion corroborates this testimony as it did not recommend termination for this alleged violation. ROA.180-181.

With respect to the SAFE procurement policies, the Defendant's own attached document never mentions Plaintiff, but even if it did suffice as competent evidence, the Holloway Declaration shows that this allegation was false or, at a minimum, contradicted. ROA.188-189, 280. (para. 10).

Finally, the Holloway Declaration further details how the discipline imposed was temporally connected to his protected activity of which the decision makers were aware, did not follow the progressive discipline policy, stood in contrast to his similarly situated non-white comparators, and was discriminatory and retaliatory. ROA.204. (para 11).

The District Court dismissed the Holloway Declaration as "self-serving." ROA.347-348. This Court has unequivocally held "self-serving affidavits and depositions may create fact issues even if not supported by the rest of the record." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021). "Where self-interested affidavits are otherwise

competent evidence, they may not be discounted just because they happen to be self-interested." *Id.* at 160-61. As aptly explained in *Guzman*, "Evidence proffered by one side to . . . defeat a motion for summary judgment will inevitably appear 'self-serving.'" *Id.* (quoting *Dall./Fort Worth Int'l Airport Bd. v. INet Airport Sys., Inc.*, 819 F.3d 245, 253 n.14 (5th Cir. 2016). This Court in *Guzman* could not be more clear: "self-serving evidence may not be discounted on that basis alone. How much weight to credit self-interested evidence is a question of credibility, which judges may not evaluate at the summary judgment stage." *Id.*

Instead, the correct inquiry, which the District Court failed to perform, is examining whether an affidavit or declaration comports with Federal Rule of Civil Procedure 56 in that it is made on personal knowledge, sets out particularized (*i.e.*, not conclusory) facts which would be admissible in evidence, and shows that the declarant is competent to testify on the matters stated. *Id.* (citing *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013)). "When these requirements are met, self-serving evidence is sufficient to create a genuine issue of material fact." *Id.* (citing *Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (collecting cases and holding that "[a] non-conclusory affidavit can create

genuine issues of material fact that preclude summary judgment, even if the affidavit is self-serving and uncorroborated")).

Clearly, the Holloway Declaration was based on personal knowledge and was not conclusory in discussing the proffered legitimate business reason for the termination of Plaintiff's employment. He set out particularized facts that contested the assertions of Defendant. The District Court is simply not permitted to disregard such supported statements. Further, the District Court's own "self-serving" characterization of the Holloway Declaration stumbles when Defendant's own attachments actually corroborate Plaintiff's testimony. Finally, where Defendant's evidence does not corroborate Plaintiff's testimony, this lack of corroboration simply creates a dispute to this fact, which can only be resolved by a jury.

In sum, the District Court on summary judgment may not pick and choose the evidence for which it gives credence. This is plainly a weighing of evidence which invades the prerogative of the ultimate fact finder— the jury. As discussed below, the District Court's discrediting of the Holloway Declaration led to it reaching the erroneous conclusion that Plaintiff did not satisfy his burden regarding the Defendant's proffered

31

legitimate business reason. Thus, the District Court committed reversible error.

## IV. *McDonnell Douglas* **Analyis Compels Reversal as Genuine Issues of Fact Exist**

### A. The District Court Properly Found that Plaintiff Met His Prima Facie Case for Race Discrimination and Retaliation for Opposing the Same.[10]

To establish a prima facie case of race discrimination, a plaintiff must show "that he 1) is a member of a protected class; 2) was qualified for his position; 3) was subjected to an adverse employment action; and 4) was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably." *Septimus v. University of Houston*, 399 F.3d 601, 609 (5th Cir. 2005). The District Court properly found that Plaintiff satisfied the elements necessary for his prima facie case finding that Plaintiff was a member of a protected class, was qualified for his position and was replaced by someone outside of the protected class. ROA.345-346.

---

[10] See Section II above. Plaintiff Holloway submits that this is the exact type of case for which the *McDonnell Douglas* burden shift mechanism causes confusion. Notwithstanding this notation given the current law, out of an abundance of caution, Plaintiff addresses the using the burden-shifting framework of *McDonnell Douglas*.

To establish a prima facie case of retaliation, a plaintiff must show "(1) he engaged in protected activity, as described in Title VII; (2) he suffered an adverse employment action; and (3) a causal nexus exists between the protected activity and the adverse employment action." *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). The District Court, once again, properly found that Plaintiff had established his prima facie case of retaliation finding that he had engaged in protected activity, he had suffered an adverse action and that the close timing of his protected activity with the adverse action supported causation at the prima facie stage. ROA.347-348. As it relates to the timing of the protected activity with the adverse action, the District Court noted, "[h]ere, taking Holloways' claims as true, a complaint of race discrimination was made once a month for three months preceding his termination"). ROA.349. On multiple occasions, the Supreme Court has held that "the burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine* 450 U.S. at 254; *Young v. UPS*, 575 U.S. 206, 228 (2015). The District Court was, thus, correct to find that Plaintiff has satisfied his prima facie case.

33

**B.    The District Court Erred When if Found that Defendant Had Satisfied Its Burden of Production With Competent Evidence.**

Unfortunately, for all of the reasons set forth in Section III, A above, the District Court erred when it found that Defendant had satisfied its burden of production of a legitimate, non-discriminatory/retaliatory reason with competent evidence.[11]

**C.    Genuine Issues of Fact Infect the Evidence Supporting Defendant's Proffered Legitimate Business Reason for Terminating Plaintiff.**

The District Court further erred in its analysis regarding the Defendant's proffered legitimate business reason. As it relates to the Plaintiff's race discrimination claim, the District Court concluded that Defendant was entitled to summary judgment because as to the pretextual nature of the Defendant's proffered legitimate business reason as "the only evidence to support his arguments are his own deposition testimony and declaration. There are no witness statement nor any other record evidence supporting his contentions that either the articulated reasons or that they may have been a reason behind his termination but

---

[11]    See Section III, A. above.

there were also other discriminatory reasons." ROA.347. This finding is where the District Court erred.

As it relates to the Plaintiff's retaliation claim, the District Court, once again, erred finding that while temporal proximity weighed in favor pretext, "Holloway does not provide 'significant record evidence' to bolster his temporal proximity claim." ROA.350. Plaintiff showed credible evidence that these allegations against him were false, that the timing of the same were suspect, that he had been told that he would not be terminated, that progressive discipline had not been followed and that the decision-makers had knowledge of his protected activity.

Further, as Judge Dennis explained in *Hagden v. Brinker Tex*, 102 F.4th 692 (5th Cir. 2025), while the plaintiff must produce "substantial evidence" to actually rebut evidence of a defendant's legitimate non-discriminatory reasons, "in the summary judgment context "substantial evidence" is evidence that is "enough to support a reasonable inference that the proffered reason is false; a mere shadow of doubt is insufficient." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001) (quoting *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999))." Put in terms closer to the summary judgment standard, the plaintiff

must "offer sufficient evidence to create a genuine issue of material fact" vis-à-vis the defendant's proffered reason. *Fahim v. Marriott Hotel Servs.*, 551 F.3d 344, 349 (5th Cir. 2008) (quoting *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, Inc., 482 F.3d 408, 411-12 (5th Cir. 2007))." As shown herein, Plaintiff provided sufficient evidence to create pretext of both his claims of race discrimination and retaliation. Thus, this Court should reverse.

Plaintiff submits that issues of material fact precluded summary judgment in that Defendant has not supported its alleged legitimate business reason through undisputed facts. Once Plaintiff establishes his prima facie case, the burden shifts to Defendant to produce a legitimate business reason justifying the termination of Plaintiff's employment. The ultimate question in a discrimination/retaliation case is whether the plaintiff can convince the jury that the adverse action(s) occurred because of race and/or retaliation. The Supreme Court has made it clear that if the jury believes that the employer's story is simply not credible, it may infer that it is hiding a real reason, which is that it did indeed operate from an improper motive. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 134 (2000). "The factfinder's

disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of a prima facie case, suffice to show intentional discrimination [or retaliation]. Thus, rejection of the Defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination (or retaliation)." *Id.* (internal quotations omitted).

For Plaintiff's race discrimination claim, a plaintiff need only show that the protected trait was a motivating factor and "need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003)(quoting 42 U.S.C. § 2000e-2(m)). For a claim of retaliation, at the pretext stage, the plaintiff is required to show make a showing of "but for" causation. *Fiest v. Louisiana, Department of Justice, Office of Attorney General*, 730 F.3d 450, 454 (5th Cir. 2013). Addressing, then, again the proffered reasons, even assuming that Defendant had presented competent summary

judgment evidence, there exists a genuine issue of fact regarding the proffered legitimate business reason.

Defendant Motion's alleges two reasons for the termination of Plaintiff's employment: (1) misuse of credit cards and (2) violation of the SAFE procurement policy. ROA.132, 190-191. As noted herein, Defendant attached two Declarations: (1) Declaration of Will Morgan ROA.178-179 and (2) Declaration of Bridget Anders as evidence. ROA.202-203. Neither Declaration addresses the proffered legitimate business reason for the termination of Plaintiff's employment. Therefore neither can be relied upon for pretext analysis. Other documentation attached to Defendant's Motion, while arguably constituting a business record hearsay exception, has not been properly authenticated. But, even if authentication were possible, these documents, on their own, do not support the conclusion that reason proffered for the termination of Plaintiff's employment was legitimate and non-discriminatory or retaliatory.

### 1.    *Alleged Improper Credit Card Use.*

The District Court found "[w]hether Holloway misunderstood the policy regarding the corporate credit card use does not excuse the fact

that violated corporate policy. Holloway admits that he used his corporate credit card for personal use on two occasions, thus, he violated policy." ROA.347. The District Court misses the point.

The point is not whether Plaintiff violated corporate policy, but rather whether reliance on this violation of corporate policy in terminating Plaintiff's employment was discriminatory or retaliatory. To support Plaintiff's allegations that it was in fact discriminatory or retaliatory, Plaintiff submitted evidence that (1) the termination of his employment occurred shortly after his protected activity and many months after the alleged violation, (2) he had previously been told that he would not be terminated for this infraction by Human Resources because he was not in disciplinary counseling and the termination was made by decision makers with knowledge of Plaintiff's protected activity. ROA.278-284. Defendant presented no witness testimony to refute these statements. None of the documentary evidence relied upon by Defendant refutes these statements. Indeed, as Plaintiff noted earlier herein, the "investigatory report" relied upon by Defendant for the misuse of credit card, corroborates Plaintiff's testimony in that it does not recommend termination and, instead, recommends (1) removal and cancellation of

39

credit cards, (2) removal from his BEC post and transfer to HDL PD shift and (3) Policy Refresher Training on my learning for 100% of Employees. ROA.180-182. What little evidence submitted by Defendant is best classified as competing testimony best left to a jury. Clearly, genuine issues of fact exist.

## 2.   SAFE Procurement Procedures.

The District Court ignored Plaintiff's evidence finding that "his disagreement with the allegations that he violated the SAFE purchasing policies is based on his self-serving interpretation of the policies" ROA.347. "He fails to provide any evidence to support that his conduct complied with company policy." ROA.347. Because the District Court improperly disregarded the Holloway Declaration, the District Court erred. In fact, as shown in the Holloway Declaration, Plaintiff denied that he had engaged in the alleged conduct. He specifically stated that "the project consisted of having to empty two rail cars as soon as possible. I called one vendor, explained the time frame and I was told that they were not available due to previous work commitments for others. I never obtained a quote. In accordance, with Defendant's policies, I reached out to the other vendor and obtained a quote. This was the only quote I

obtained, and I never violated Defendant's policies." ROA.278-284. Once again, Defendant presented no witness testimony regarding this issue and relied solely on one document that contains hearsay and is unauthenticated. Even if this document were properly considered, however, it does not demonstrate that Plaintiff violated the SAFE Procurement Policy. The only document attached to support Defendant's claim is the "Summary of GIA Investigation of SONOCO Recycling Alexandria Plant." ROA.188-189. This Court will search in vain for any entry that will connect the alleged overbillings of SONOCO with Plaintiff. Nothing in this document recommends the termination of the employment of Plaintiff.

Finally, in addition to the falsity of the proffered reason, the temporal connection to the adverse action to the protected activity, the adverse action was taken by decision makers who had knowledge of the protected activity of the Plaintiff. ROA.278-284.

This Court has clearly accepted that in addition to establishing the falsity of the proffered reasons, there are a variety of other ways that pretext can be shown. *Patterson v. McLean Credit Union,* 419 U.S. 164 (1989) (plaintiffs "may not be forced to pursue any particular means of

41

demonstrating that respondent's stated reasons are pretextual") and direct evidence is not required. For example, the fact that the termination is based on reasons which were subjective, and which were proffered by the person with knowledge of a plaintiff's protected activity shortly after learning of the same are all factors which weigh towards rejection of the proffered reason. In this case, as shown in the section above, the decision makers were aware of Mr. Holloway's protected activity and the adverse action occurred shortly after learning of the same.

When the decision to terminate is made by someone who: (i) did not witness the actual events; (ii) has had their vision tainted with knowledge of protected activity, and (iii) made a subjective determination shortly after learning of the protected activity, a genuine issue of fact exists as to pretext. In *Martinez v. El Paso County*, 710 F.2d 1102, 1104 n. 2 (5th Cir. 1983), the court recognized that the subjective nature of an employer's stated reason for discharge, particularly when combined with other factors such as timing, is relevant to and supports a finding of both causation and pretext. *Lindsey v. Prive Corp.,* 987 F.2d 324, 327 (5th Cir. 1983); *Martinez, supra*; *Miles v. M.N.C. Corp.*, 750 F.2d 867 (11th Cir. 1985); *Rowe v. General Motors Corp.*, 472 F.2d 348, 359 (5th Cir. 1972).

Naturally, then, it weighs against the grant of summary judgment. As the Fifth Circuit stated in *Lindsey, supra*, a discrimination case:

> In ruling on a summary judgment motion it is not appropriate for the District Court to determine whether subjective criteria are bona fide, and, more critically, to make dispositive determinations about the employer's credibility.

*Id.* at 327 (reversing summary judgment).

In sum, two lone, and largely unsupported, violations of company policy, temporally removed from Plaintiff's actual termination, should not and simply cannot give Defendant carte blanche authority to terminate Plaintiff's employment in the face of his reporting of discriminatory and retaliatory practices.

## V.    The District Court Erred When it Dismissed Plaintiff's State Whistleblower Claim.

The Louisiana "whistleblower" statute, La. R.S. 23:967, provides that "an employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law... [the employee] *objects to* or *refuses to participate* in an employment act or practice that is in violation of law." La. R.S. 23:967(A)(3) (emphasis added). Within the meaning of La. R.S. 23:967, Plaintiff, in good faith, advised Defendant that Bridget Anders was signing paperwork in

43

violation of state and federal law, and that he was being required to be a part of paperwork certifying that per the waste determination all rules regarding loading, securing were being done properly even though Ms. Anders had never been involved in the loading or securing process. ROA.239-240 (Depo at pp. 20-37) and ROA.244-245 (Depo at pp. 56-58). Specifically, Plaintiff objected to and refused to participate in actions that would result in the falsification of government documents. As stated by Plaintiff he objected to and refused to participate in this falsification:

> They were wanting me to load hazardous waste and let someone else do the paperwork that was not – had no clue what it was. So, I would load the hazardous waste and then somebody else just do the paperwork that had no clue what was going on.
>
> …..
>
> And if – if you – if you sign off that I did it, well, if you don't go put your eyes on it or you didn't do it, then you're falsifying company or government documents.
>
> If I am going to load the load, then I have to sign the paperwork….they were wanting me to do the work and let her sign. ROA.239 (Depo at p. 31, ll. 16-19; 35, ll. 15-18); ROA.240 (Depo at 36, ll. 1-13).

When Plaintiff was being asked to participate in the falsification of government document, he reported to his supervisor, Mr. Morgan, who was the manager of the Health Safety and Environment Department,

that government paperwork was being falsified and he stated that he refused to participate in said action and intended to report these violations further to authorities.[12] Within the meaning of La. R.S. 23:967, Plaintiff objected to, or refused to participate in an illegal practice. When Plaintiff first made this disclosure and reported to Mr. Morgan, he was told that he needed to stop reporting the state law violation because the plant manager had not been truthful with upper management about who was signing government paperwork. ROA.278-284. ROA.240 (Depo at pp. 39-40). He made a report six weeks before the termination of his employment, and again in a meeting that occurred two weeks before the termination of his employment. ROA.278-284, 240 (Depo at p. 37, ll. 1-18).

The District Court rejected this evidence finding that "at no point in his pleadings, deposition nor opposition to the instant motion does he point to a law that prohibited Bridget Anders from signing transportation documents." ROA.351. The District Court is wrong. Plaintiff clearly pointed to statutory law. ROA.270. Further, The District Court misses

---

[12]    Defendant's attachment to the Defendant's Motion of the Declarations of Mr. Will Morgan and Ms. Bridget Anders stating that Plaintiff never informed them of state law violations only creates a genuine issue of fact regarding this issue.

the point, once again. As stated by Plaintiff, the loading of hazardous materials requires the filing of public records certifying that based on the signor's personal knowledge and per waste determinations all rules regarding loading and securing of hazardous waste were properly done. Plaintiff testified that Ms. Anders was never involved in the process of loading and securing hazardous waste, yet, she was signing off on publicly filed governmental documents indicating that this process has been done in accordance with all rules based on her personal knowledge. Such a certification is false. Plaintiff objected to and refused to participate in this falsification of governmental documents which violated applicable state law.

The District Court further finds that because Plaintiff did not "present any documents evidencing such violations," his claim must fail. ROA.351. There does not have to be evidence of an actual violation. There only needs to be evidence that Plaintiff **objected to** and **refused to** participate in **some act that would have been an actual violation of state law**. La. R.S. 23:967. To read the statute otherwise is to misread the statute. Plaintiff knew that he was the person who had loaded and secured the hazardous waste, and he knew that he was not the person

signing off on the certifications. This testimony, alone, is enough to establish that he objected to and refused to participate in an act that actually would have violated state law. At a minimum, a genuine issue of fact exists such that the District Court should be reversed.

## CONCLUSION

For the foregoing reasons, Plaintiff asks this Court to reverse the District Court and remand this matter so that the many issues of fact may be appropriately tried to a jury.

SUBMITTED BY:

*/s/ Allison A. Jones*
Allison A. Jones, Bar No. 16990
DOWNER, JONES, MARINO &
WILHITE, LLC.
401 Market Street, Suite 1250
Shreveport, LA 71101
Tel: 318-213-4444
Fax: 318-213-4445

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

This is to certify that the foregoing instrument has been served via the Court's ECF filing system in compliance with Rule 25(b) and (c) of the Federal Rules of Appellate Procedure, on counsel of record identified below and has been transmitted to the Clerk of the Court:

Shreveport, Louisiana, this 12th day of December 2025.

By:  /s/ Allison A. Jones
         ATTORNEY FOR PLAINTIFF

48

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1: this document contains 8,060 words.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Office 365 Word in 14-point font and Century Schoolbook.

3. THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETION OF THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN Fed. R. App. P. 32(a)(7), MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

Shreveport, Louisiana, this 12th day of December, 2025.

*/s/Allison Anne Jones*
Counsel for Plaintiff-Appellant

49