**Case No. 25-30556**

---

# United States Court of Appeals
# for the Fifth Circuit

---

**BRANDON HOLLOWAY,**
*Plaintiff – Appellant*

**vs.**

**PROCTER & GAMBLE MANUFACTURING COMPANY**
*Defendant – Appellee*

---

**On Appeal from the United States District Court**
**for the Western District of Louisiana**
**Civil Action No. 1:23-cv-01725**
**The Honorable District Judge Dee D. Drell, Presiding**

---

**BRIEF OF APPELLEE,**
**PROCTER & GAMBLE MANUFACTURING COMPANY**

---

**Michael B. Taylor (LA Bar # 39081)**
Michael.Taylor@jacksonlewis.com
Nicolas Cotten (LA Bar #41200)
Nicolas.Cotten@jacksonlewis.com
**JACKSON LEWIS P.C.**
**601 Poydras Street, Suite 1400**
**New Orleans, Louisiana 70130**
**Telephone:  (504) 208-1755**
**Facsimile:   (504) 208-1759**

**COUNSEL FOR DEFENDANT/APPELLEE,**
**THE PROCTER & GAMBLE MANUFACTURING CO.**

i

**Case No. 25-30556**

---

# United States Court of Appeals
# for the Fifth Circuit

---

**BRANDON HOLLOWAY,**
*Plaintiff – Appellant*

**vs.**

**PROCTER & GAMBLE MANUFACTURING COMPANY**
*Defendant – Appellee*

---

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made to allow the judges of this Court to evaluate possible disqualification or recusal.

1. Brandon Holloway
   Plaintiff –Appellant

2. Allison A. Jones
   Counsel for Appellant

3. Downer, Jones, Marino & Wilhite, L.L.C.
   Counsel for Appellant

4. The Procter & Gamble Manufacturing Co.
   Defendant-Appellee

ii

5. Michael Brian Taylor
   Counsel for Appellee

6. Nicolas M. Cotten
   Counsel for Appellee

7. Jackson Lewis P.C.
   Counsel for Appellee

Respectfully submitted,

*/s/ Michael B. Taylor*
Michael B. Taylor (LA Bar # 39081)
Michael.Taylor@jacksonlewis.com
Nicolas M. Cotten (LA Bar # 41200)
Nicolas.Cotten@jacksonlewis.com
**JACKSON LEWIS P.C.**
601 Poydras Street, Suite 1400
New Orleans, Louisiana 70130
Telephone:  (504) 208-1755
Facsimile:   (504) 208-1759

**COUNSEL FOR DEFENDANT,
THE PROCTER & GAMBLE
MANUFACTURING CO.**

iii

## **STATEMENT REGARDING ORAL ARGUMENT**

While Appellee, The Procter & Gamble Manufacturing Co., believes that this case turns on binding and controlling precedent, it respectfully requests the opportunity to present oral argument to this Honorable Court to the extent the Court is concerned regarding any aspect of this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................. iv

TABLE OF AUTHORITIES ............................................................................. vii

STATEMENT OF JURISDICTION ...................................................................... 1

I. STATEMENT OF THE ISSUES ................................................................... 2

II. STATEMENT OF THE CASE ...................................................................... 2

    A. Summary of the Case ............................................................................. 2

    B. Statement of Material Facts .................................................................. 3

III.   SUMMARY OF ARGUMENT ................................................................. 6

IV.   ARGUMENT AND AUTHORITIES ........................................................ 7

    A. The Standard of Review. ....................................................................... 7

    B. The District Court Properly Concluded That Appellant Failed to
    Establish a Race Discrimination Claim. .................................................. 8

        1. *The District Court did not abuse its discretion in employing the
        McDonnell-Douglas burden shifting analysis.* ................................. 9

        2. *Appellant's termination was not discriminatory.* ........................... 13

        3. *Appellant fails to identify any similarly situated comparators.* ........ 14

        4. *Appellant cannot establish that P&G's legitimate, non-
        discriminatory reasons for terminating his employment were
        pretext to mask intentional discrimination.* ..................................... 16

    C. The District Court Correctly Held That Appellant Failed to Establish
    a Retaliation Claim. ............................................................................. 17

        1. *Appellant failed to show that he engaged in protected activity.* ........ 18

        2. *Appellant failed to establish significant record evidence to
        advance his retaliation claim.* ...................................................... 18

    D. The District Court Correctly Concluded That Appellant Failed to
    Establish a Viable Whistleblower Claim. ............................................... 20

        1. *Appellant failed to show any violation of Louisiana state law.* ........ 20

*2. Appellant did not advise P&G of any state law violation and did not refuse to participate in or threaten to disclose any illegal activity.* ...................................................................21

*3. Appellant cannot show that P&G terminated his employment because of any refusal to participate or threats to disclose an illegal practice.* ...........................................................23

VI.    CONCLUSION...............................................................23

CERTIFICATE OF SERVICE .................................................25

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS..........26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accardo v. La. Health Servs. & Indem. Co.*,
  2005-2377 (La. App. 1 Cir. 6/21/06), 943 So.2d 381........................................21

*Alvarez v. City of Brownsville*,
  904 F.3d 382 (5th Cir. 2018................................................................................12

*Ames v. Ohio Dep't of Youth Servs.*,
  605 U.S. 303 (2025)........................................................................................9, 10

*Belton v. GEO Grp., Inc.*,
  2021 U.S. Dist. LEXIS 45541 (W.D. La. Mar. 10, 2021), *affirmed*,
  2021 U.S. App. LEXIS 36150 (5th Cir. 2021).....................................................14

*Campbell v. Sonat Offshore Drilling, Inc.*,
  979 F.2d 1115 (5th Cir. 1992) ...........................................................................12

*Carter v. Qwick Inc.*,
  No. 3:24-cv-1090-S-BN, 2025 U.S. Dist. LEXIS 161826 (N.D.
  Tex. July 8, 2025) ...............................................................................................10

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..............................................................................................8

*Chambliss v. Entergy Corp.*,
  2023 U.S. Dist. LEXIS 193005 (E.D. La. Oct. 27, 2023) ..................................15

*Eason v. Thaler*,
  73 F.3d 1322 (5th Cir. 1996) ................................................................................8

*Floyd v. Chilly's L.L.C.*,
  2017 U.S. Dist. LEXIS 61353 (M.D. La. Apr. 21, 2017) ...................................22

*Forsyth v. Barr*,
  19 F.3d 1527 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994) ...............................8

*Garza v. Laredo Indep. Sch. Dist.*,
  309 F. App'x 806 (5th Cir. 2009)........................................................................21

*Hale v. Touro Infirmary*,
   2004-0003 (La. App. 4 Cir. 11/03/04), 886 So.2d 1210 .....................................20

*Jerge v. City of Hemphill, Tex.*,
   80 F. App'x 347 (5th Cir. 2003) ........................................................................11

*Kanida v. Gulf Coast Medical Pers. Lp*,
   363 F.3d 568 (5th Cir. 2004) .............................................................................11

*Lee v. Kan. City S. Ry. Co.*,
   574 F.3d 253 (5th Cir. 2009) ...............................................................................9

*LeMaire v. Louisiana*,
   480 F.3d 383 (5th Cir. 2007) .............................................................................17

*Long v. Eastfield Coll.*,
   88 F.3d 300 (5th Cir. 1996) ...............................................................................17

*McCoy v. City of Shreveport*,
   492 F.3d 551 (5th Cir. 2007) .............................................................................17

*McDonald v. City of Corinth*,
   102 F.3d 152 (5th Cir. 1996) ...............................................................................8

*McDonnell Douglas v. Green*,
   411 U.S. 792 (1973).................................................................................*passim*

*Myles v. TPUSA-FHCS, Inc.*,
   No. 18-799, 2020 U.S. Dist. LEXIS 198789 (W.D. La. Oct. 23,
   2020) ..................................................................................................................13

*Powell v. Rockwell Intern. Corp.*,
   788 F.2d 279 (5th Cir. 1986) .............................................................................11

*Sandstad v. Cb Richard Ellis, Inc.*,
   309 F.3d 893 (5th Cir. 2002) .............................................................................11

*Scott v. U.S. Bank Nat'l Ass'n*,
   16 F.4th 1204 (5th Cir. 2021) ............................................................................11

*Sierra Club, Inc. v. Sandy Creek Energy Assocs.*,
   627 F.3d 134 (5th Cir. 2010) ...............................................................................8

*Squyres v. Heico Cos.*,
  782 F.3d 224 (5th Cir. 2015) ..............................................................11

*Tatum v. S. Co. Servs., Inc.*,
  930 F.3d 709 (5th Cir. 2019) ..............................................................11

*The Compliance Source, Inc. v. Greenpoint Mortg. Funding, Inc.*,
  624 F.3d 252 (5th Cir. 2010) ................................................................8

*Traylor v. S. Components, Inc.*,
  No. 18-cv-0775, 2019 U.S. Dist. LEXIS 129721 (W.D. La. Aug. 1,
  2019) ...................................................................................................11

*Turner v. Baylor Richardson Med. Ctr.*,
  476 F.3d 337 (5th Cir. 2007) ..............................................................13

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
  133 S.Ct. 2517 (2013) .........................................................................17

*Wade v. Home Depot USA, Inc.*,
  2016 U.S. Dist. LEXIS 992 (W.D. La. Jan. 5, 2016) ..........................21

*Warren v. City of Tupelo*,
  332 F. App'x 176 (5th Cir. 2009) ........................................................12

*Willis v. Cleco Corp.*,
  749 F.3d 314 (5th Cir. 2014) ..............................................................11

**Statutes**

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ......................................................................................1

28 U.S.C. § 1367 ......................................................................................1

La. R.S. § 23:967 ................................................................................6, 20

**Other Authorities**

Fed. R. Civ. P. 56(c)........................................................................8, 10, 11

## **STATEMENT OF JURISDICTION**

This is an appeal of a final judgment of the United States District Court for the Western District of Louisiana, which disposed of all of Appellant, Brandon Holloway's, claims in this lawsuit. The District Court rendered its final judgment on August 27, 2025[1] and Plaintiff-Appellant, Brandon Holloway, initiated this appeal on September 25, 2025.[2]   The District Court had federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367 for all state-law claims.   This Court has jurisdiction over the case pursuant to 28 U.S.C. § 1291.

---

[1] ROA.354.

[2] ROA.355-356.

## I.   STATEMENT OF THE ISSUES

To better focus the appeal, Appellee, The Procter & Gamble Manufacturing Co. ("P&G") provides this statement of the issues:

1.      Whether the District Court erred in granting summary judgment on Appellant's race discrimination claim.

2.      Whether the District Court erred in granting summary judgment on Appellant's retaliation claim.

3.      Whether the District Court erred in granting summary judgment on Appellant's state law whistleblower claim.

## II.   STATEMENT OF THE CASE

### A.      Summary of the Case.

Plaintiff/Appellant, Brandon Holloway ("Holloway"), filed his complaint in the United States District Court for the Western District of Louisiana on December 6, 2023.[3] Holloway alleged that P&G discriminated against him because of his race after P&G terminated his employment in December 2022. He also claimed that the company separated him after he complained about state and federal violations surrounding waste disposal. Holloway further claimed that P&G defamed him by broadcasting false reasons behind his termination.

---

[3] ROA.6-13.

2

P&G moved for summary judgment on February 28, 2025.[4]  On August 27, 2025, Judge Dee Drell issued his Ruling[5] granting summary judgment for P&G as to all counts of the Complaint.[6]  Plaintiff filed his Notice of Appeal with the Court on September 25, 2025.[7]

### B.    Statement of Material Facts.

Holloway began working for P&G in 2007 as a plant technician at its fabric care site in Alexandria, Louisiana.[8] He held several roles during his tenure, most recently in the role of a Business Environmental Contact (BEC), where he managed the storage and shipment of waste from on-site storage facilities.[9] His duties included coordinating with sub-vendors, supervising the loading of non-hazardous waste and confirming the transport and removal of such loads through the completion of waste manifest forms.[10] These forms were part of P&G's protocols to monitor waste and to provide accurate billing statements for vendors.

---

[4] ROA.125-203.

[5] ROA.342-353.

[6] ROA.354.

[7] ROA.355-356. Appellant did not appeal the District Court's ruling on his state law defamation claim, so while it will not be briefed in full here, P&G maintains that the District Court properly dismissed that claim.

[8] ROA.143. (Deposition of Brandon Holloway at 10).

[9] ROA.143-145. (Deposition of Brandon Holloway at 10-12).

[10] ROA.146.  (Deposition of Brandon Holloway at 13).

While he largely had a favorable work record, Holloway's difficulties began in November 2020. An investigation revealed that he bypassed the company's procurement department and directly contacted suppliers American Chemical and Advanced Specialized Carriers for loading and transportation quotes, which violated P&G's SAFE purchasing policy.[11] The company issued a Level 1 corrective action, which is the least severe disciplinary action that can be levied.[12] A Global Internal Audit (GIA) also found stewardship outages in the waste manifest tracker that Holloway maintained that affected the validity of vendor invoices.[13] P&G reassigned Holloway from the BEC position but required him to continue his loading and labeling duties.[14] Another team member, the Site Environmental Leader (SEL), would be responsible for ensuring the manifests were complete and accurate.[15] Holloway disagreed with this approach and insisted on continuing to sign the manifests.[16]

In August 2022, P&G learned that Holloway used his corporate credit card for personal use. He paid $100.11 to purchase gas for personal use on July 2, 2022, and

---

[11] ROA.176-177.  (November 16, 2020 Corrective Action).

[12] ROA.176-177.  (November 16, 2020 Corrective Action).

[13] ROA.178-179.  (Declaration of Will Morgan).

[14] ROA.152-153.  (Deposition of Brandon Holloway at 35-36).

[15] ROA.152-153. (Deposition of Brandon Holloway at 35-36).

[16] ROA.155. (Deposition of Brandon Holloway at 38).

paid $115.00 for a personal dinner on July 19, 2022.[17] His purchases incurred a late fee that alerted P&G of the unauthorized charges. Holloway eventually paid the charges and acknowledged that he violated company policy in a meeting with HR representatives on September 7, 2022.[18]

On November 18, 2022, another GIA audit found overbilling by a sub-vendor, where the vendor submitted invoices for larger amounts than P&G gate records showed.[19] The report found that Holloway failed to review sub-vendor timesheets for accuracy.[20] It also recommended further disciplinary action against Holloway for reaching out directly to suppliers in October 2022[21] after being disciplined for the same infraction in November 2020.[22] P&G terminated Holloway's employment on December 6, 2022, citing the SAFE purchasing policy violations, and the misuse of his corporate card.[23] That same day, Holloway contacted the P&G employee hotline and complained that he was terminated without a corrective action.[24] He noted that he was under the impression that he would only face a corrective action for the credit

---

[17] ROA.180-182. (November 30, 2022 Investigation Report Summary – Incident 28145).

[18] ROA.183-187.  (Notes from September 7, 2022 HR meeting with Brandon Holloway).

[19] ROA.188-189. (November 18, 2022 Global Internal Audit Report Summary).

[20] ROA.188-189. (November 18, 2022 Global Internal Audit Report Summary).

[21] ROA.189.  (November 18, 2022 Global Internal Audit Report Summary).  In October 2022, Holloway improperly contacted a supplier, requesting a "new price per lb for the soapy water."

[22] ROA.189.  (November 18, 2022 Global Internal Audit Report Summary).

[23] ROA.190-191. (December 6, 2022 termination letter).

[24] ROA.192-195. (December 6, 2022 investigation report summary – Incident 28191).

card purchases.[25] P&G investigated Holloway's complaints and found them to be unsubstantiated.[26]

## III.    SUMMARY OF ARGUMENT

For the same reasons outlined in Judge Drell's detailed and well-reasoned Ruling, this Court should affirm the District Court's order granting summary judgment to P&G.

The District Court properly dismissed Appellant's claims, citing numerous bases for its conclusion that the record evidence and applicable law showed that he failed to present any specific facts rebutting P&G's legitimate, non-discriminatory reasons for his separation or creating any fact questions surrounding pretext. Regarding Appellant's whistleblower claim, the District Court concluded that Appellant failed to show any violation of Louisiana law and did not satisfy the elements of La. R.S. §23:967.

On appeal, Appellant does not raise any new substantive arguments. Rather, he continues to argue in a conclusory manner that P&G discriminated against him, relying solely upon his limited, subjective personal beliefs to invent factual disputes where none exist. The balance of his arguments only suggest that he disagreed with

---

[25] ROA.192-195. (December 6, 2022 investigation report summary – Incident 28191).

[26] ROA.196. (March 22, 2023 investigation report summary – Incident 28191).

P&G's employment decisions, not that they were based on any protected characteristics.

Nevertheless, Appellant cannot show that his separation was motivated by his race in any way and he cannot show that P&G's reasons for separation were false or unworthy of credence, even with reasonable inferences made in his favor.

Appellant's whistleblower claim suffers the same fate, as he advances no specific facts showing that P&G violated any state or federal law. The record has no evidence that he threatened to expose statutory or regulatory infractions or took part in any investigation that would support a whistleblower claim. Ultimately, Appellant cannot overcome the undisputed record evidence that dooms his claims. As such, this Court should affirm the District Court's order granting summary judgment in full.

## IV.    <u>ARGUMENT AND AUTHORITIES</u>

Applying well-established principles of law to uncontroverted facts supported by admissible evidence, the District Court properly granted summary judgment to P&G.

### A.    The Standard of Review.

The applicable standard of review from the District Court's summary judgment order is *de novo,* and this Court may also affirm summary judgment on any matter presented to the District Court, even if not a ground expressly relied on

by the District Court.[27]    Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[28]  "An issue is material if its resolution could affect the outcome of the action."[29]  When deciding whether a material issue of fact exists, the Court must view the facts and inferences in the light of most favorable to the non-moving party.[30]  Conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.[31] Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.[32]

### B.    The District Court Properly Concluded That Appellant Failed to Establish a Race Discrimination Claim.

Appellant claims that P&G discriminated against him by terminating his employment after multiple infractions of company policy. When asked, however, for specific facts supporting his claims, Appellant could provide no direct evidence

---

[27] *The Compliance Source, Inc. v. Greenpoint Mortg. Funding, Inc.,* 624 F.3d 252, 258 (5th Cir. 2010); *McDonald v. City of Corinth*, 102 F.3d 152, 154-55 (5th Cir. 1996).

[28] Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

[29] *Sierra Club, Inc. v. Sandy Creek Energy Assocs.,* 627 F.3d 134, 138 (5th Cir. 2010).

[30] *Id.*

[31] *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

[32] *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir. 1994), *cert. denied,* 513 U.S. 871 (1994).

detailing how any alleged acts of discrimination, even if true, occurred specifically because of his race.

Appellant provided no direct evidence of discrimination before the District Court, so the analysis proceeds under the *McDonnell Douglas* burden shifting process.[33] To establish a *prima facie* case, Appellant must show: (1) he is a member of a protected group; (2) he suffered an adverse employment action; (3) he was qualified for the position at the time of discharge; and (4) that after his discharge, P&G replaced him with a member outside the protected class, or that it treated him less favorably than members outside the protected class under nearly identical circumstances.[34]

### 1. The District Court did not abuse its discretion in employing the McDonnell-Douglas burden shifting analysis.

In framing his appeal, Appellant blithely contends that the District Court improperly relied on the *McDonnell Douglas* burden-shifting framework in dismissing his claims. He references *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025) to support his argument – specifically Justice Thomas' concurrence where he suggests that doctrines in discrimination lawsuits "have a tendency to distort the underlying statutory text, impose unnecessary burdens on litigants and cause confusion for courts." Justice Thomas purportedly opined that in the right case,

---

[33] *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).

[34] *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

the Supreme Court should reconsider whether the McDonnell Douglas framework is a workable tool for analyzing discrimination cases.

Three readily apparent realities belie Appellant's argument. First, he ignores that the *Ames* Court only rejected the "background circumstances" rule the Sixth Circuit applied in reverse discrimination cases – not the burden shifting analysis in its entirety. Second, "the right case" as Justice Thomas presumably references, certainly does not involve situations where an employee-plaintiff fails to present any objective evidence supporting his claim – as Appellant has failed to do here. Third, Appellant cites absolutely no authority suggesting that the Fifth Circuit (or any Circuit) has abandoned the burden-shifting framework for analyzing discrimination claims.

As this Court is well aware, the *McDonnell Douglas* framework is designed to operate within the summary judgment context, providing a structure for determining whether a genuine dispute of material fact exists at each stage. The courts in this Circuit have continually emphasized that the framework does not alter the Rule 56 standard.[35] The framework applies when the Appellant lacks direct evidence of discrimination; in other words, *McDonnell Douglas* created a useful tool

---

[35] *See Carter v. Qwick Inc.,* No. 3:24-cv-1090-S-BN, 2025 U.S. Dist. LEXIS 161826, at *17 (N.D. Tex. July 8, 2025) ("*McDonnell Douglas* sought only to supply a tool for assessing claims, typically at summary judgment, when the Plaintiff relies on indirect proof of discrimination.").

for Appellants to create a dispute of material fact with only circumstantial evidence for their discrimination claim.[36]

At each stage, the court's inquiry is whether the nonmovant has produced evidence sufficient to create a genuine dispute of material fact, as required by Rule 56.[37] The ultimate burden of persuasion remains with the plaintiff, and the court does not make credibility determinations at summary judgment.[38] If the plaintiff's evidence creates a genuine dispute of material fact as to pretext and discriminatory or retaliatory motive, summary judgment must be denied. But simply disputing the employer's proffered reason for termination – an argument Appellant clings to here – is not sufficient to defeat summary judgment.[39] The Fifth Circuit has consistently applied these principles, with no meaningful divergence or judicial disagreement.[40]

---

[36] *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1210 n.2 (5th Cir. 2021) ("*McDonnell Douglas* concerned the order of proof in an employment-discrimination action when the employee submits no direct evidence of discrimination."); *Tatum v. S. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019) ("In the absence of direct evidence of discriminatory intent, we apply the *McDonnell Douglas* framework to determine the reason for an employee's discharge." (citations omitted)); *Jerge v. City of Hemphill, Tex.*, 80 F. App'x 347, 350 (5th Cir. 2003) ("If a Plaintiff presents direct evidence of discrimination, the *McDonnell Douglas* framework does not apply.")

[37] *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014); *Sandstad v. Cb Richard Ellis, Inc.*, 309 F.3d 893, 896–97 (5th Cir. 2002).

[38] *Reeves v. Sanderson Plumbing Prods.*, Inc., 530 U.S. 133, 143 (2000); *Squyres v. Heico Cos.*, 782 F.3d 224, 231–32 (5th Cir. 2015).

[39] *Traylor v. S. Components, Inc.,* No. 18-cv-0775, 2019 U.S. Dist. LEXIS 129721, at *14 (W.D. La. Aug. 1, 2019).

[40] *See, e.g., Kanida v. Gulf Coast Medical Pers. Lp*, 363 F.3d 568, 575 (5th Cir. 2004); *Powell v. Rockwell Intern. Corp.*, 788 F.2d 279, 285 (5th Cir. 1986).

Furthermore, district courts and Fifth Circuit appellate panels are strictly bound by published Fifth Circuit precedent unless that precedent is expressly overruled by the Fifth Circuit (sitting en banc) or by the United States Supreme Court.[41] This principle applies despite whether a party argues that the precedent is wrongly decided or inconsistent with subsequent Supreme Court dicta.

With that, Appellant's "throw the baby out with the bathwater" approach to *McDonnell Douglas* has no merit and should be disregarded in its entirety. Even taking Appellant's argument at face value, *McDonnell Douglas* does not, and cannot, require the weighing of evidence at summary judgment. Instead, it is a useful tool for litigants to use circumstantial evidence to create a fact question at the summary judgment stage because it is difficult for an employee-plaintiff to provide direct evidence of discrimination.[42]

As will be described in further detail, Appellant has no evidence that creates a genuine dispute of material fact regarding pretext. The operative word here is "fact," as Appellant's only evidence is his declaration that states his *personal, subjective opinions* about P&G's motivations, and it is well settled that conclusory statements – by themselves – are not sufficient to create a fact question in this

---

[41] *See Alvarez v. City of Brownsville*, 904 F.3d 382, 398 (5th Cir. 2018) (en banc) ("It has been long established that a legally indistinguishable decision of this court must be followed by other panels of this court and district courts unless overruled en banc or by the United States Supreme Court."); *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115, 1121 n.8 (5th Cir. 1992).

[42] *Warren v. City of Tupelo*, 332 F. App'x 176, 180 (5th Cir. 2009).

regard.[43]

Ultimately, the District Court followed established precedent in applying *McDonnell Douglas*. Also, when Appellant's lack of evidence is balanced against P&G's legitimate business reasons for its decisions, the District Court was well within its authority to dismiss Appellant's claims. The District Court's decision should be affirmed.

### 2.    *Appellant's termination was not discriminatory.*

Before the District Court, Appellant claimed that he was a member of a protected group and that he suffered an adverse employment action, but he advanced no facts suggesting that he was qualified for the position when he was discharged or that his race played any part in the company's decision.[44] The record shows that P&G cited multiple violations of its SAFE procurement policies and unauthorized purchases on his corporate credit card.[45] Appellant's discrimination claim is merely his belief that the proverbial "punishment did not fit the crime." However, P&G was squarely within its right to determine that his employment should not continue

---

[43] *Myles v. TPUSA-FHCS, Inc.*, No. 18-799, 2020 U.S. Dist. LEXIS 198789, at *16 (W.D. La. Oct. 23, 2020) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007).

[44] While the District Court noted that Appellant's infractions at the end of his tenure do not suggest that he was not qualified for the position, P&G maintains that its decision to relieve him of his responsibilities with waste manifests was not based on any protected characteristic. Similarly, the decision to separate Appellant's employment was based purely on continuing performance concerns.

[45] ROA.190-191.  (December 6, 2022 termination letter).

because of his continuing policy violations. After all, employers are entitled to make employment decisions based on workers' performances and their ability to follow business rules.[46] With that, the decision to separate Appellant for these infractions does not suggest that P&G discriminated against him. With no facts suggesting that race played a part in his termination, Appellant's discrimination claim fails.

### 3. *Appellant fails to identify any similarly situated comparators.*

Appellant fails to identify similarly situated comparators who were treated differently. While he names six non-white employees who were purportedly treated better, he provides no evidence or context to support his position. He only relies on a general, misguided notion that P&G treated African American employees more favorably than Caucasian employees. In his discovery responses, Holloway contends that "*[a]ll Black people at P&G got special treatment compared to White people.*" He also states that "*if a Black person were to do something bad enough to get a write-up, it would be a Level 1, but a White person would usually get a Level 3.*"[47]

Holloway adds no specific testimony or documentary evidence to support his claims. When asked about how the individuals named in his Complaint were treated favorably in comparison, he failed to provide any specific details about how P&G discriminated against him and testified that *he only felt like* others around him were

---

[46] *See, e.g., Belton v. GEO Grp., Inc.,* 2021 U.S. Dist. LEXIS 45541 (W.D. La. Mar. 10, 2021), *affirmed*, 2021 U.S. App. LEXIS 36150 (5th Cir. 2021).

[47] ROA.200. (Brandon Holloway's Response to Interrogatory No. 21).

treated favorably compared to him.[48]  In fact, he could not identify any instances between September 29, 2022 and December 6, 2022 (the time referenced in his Complaint) where he was treated less favorably than these individuals.[49] When asked about how he learned about how these employees were investigated and disciplined, he testified that he had no specific knowledge of any investigations related to African-American employees and was not personally involved in any disciplinary actions.[50]

Appellant's nebulous, self-serving allegations are not competent summary judgment evidence.[51] As well established before this Court, generalized allegations – with nothing more – do not create fact questions for a jury to decide.[52] As such, Appellant fails to identify any similarly situated comparators, and he cannot establish a prima facie case of race discrimination.

---

[48] ROA.162. (Deposition of Brandon Holloway at 48).

[49] ROA.156-165.  (Deposition of Brandon Holloway at 42-51).  In his Second Amended Complaint, Appellant claims that he spoke to Will Morgan at some point between September 29, 2022, and December 6, 2022, alleging that several non-white employees were treated differently. Yet Appellant still has no personal knowledge of the sanctions against them and conducted no investigation into them to develop any facts supporting his claim.

[50] ROA.156-165. (Deposition of Brandon Holloway at 42-51).

[51] Appellant conducted no discovery to gather any other information about the discipline he believed was discriminatory.

[52] *See, Chambliss v. Entergy Corp.*, 2023 U.S. Dist. LEXIS 193005 (E.D. La. Oct. 27, 2023).

### 4. *Appellant cannot establish that P&G's legitimate, non-discriminatory reasons for terminating his employment were pretext to mask intentional discrimination.*

Even if Appellant could establish a prima facie race discrimination claim (which he cannot), he cannot rebut P&G's legitimate, non-discriminatory reasons for terminating his employment. The termination letter provides the reasons for P&G's decision.[53] Appellant offers nothing refuting P&G's statements and only advances subjective, post-hoc accusations that have no evidentiary support.[54] While Appellant may genuinely believe that he was treated unfairly, that – by itself – does not create a fact question regarding ulterior motives. Notably, Appellant failed to conduct any discovery to create any fact questions surrounding pretext. As such, Appellant cannot establish any facts suggesting that P&G's reasons for terminating his employment were untrue or not to be believed. For these reasons, Appellant's Title VII claim fails. The District Court properly concluded that summary judgment was appropriate, and its decision should not be disturbed.

---

[53] ROA.190-191. (December 6, 2022, termination letter).

[54] Appellant argues in his appeal that P&G did not provide any witness statements to support its reason for termination. However, with showing a legitimate, non-discriminatory reasons for its actions, P&G only has a burden of production – not persuasion – so no supporting statements are required. But Appellant admitted to the unauthorized use of his credit card, which justified separation by itself. While Appellant disputes the results of the SAFE investigations, he presents nothing to suggest that the inquiries were motivated solely by race.

**C.    The District Court Correctly Held That Appellant Failed to Establish a Retaliation Claim.**

The District Court was also correct in holding that Appellant did not establish a retaliation claim.  To make a prima facie showing of a retaliation claim, Appellant must demonstrate that (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse employment action; and (3) there was a causal link between the protected activity and the subsequent materially adverse employment action.[55] Pursuant to the framework set out in *McDonnell Douglas Corp. v. Green*,[56] "[i]f the employee establishes a prima facie case, the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision.  After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation."[57]  An employee establishes pretext by showing that the adverse action would not have occurred "but for" the employer's retaliatory reason for the action.[58]  To avoid summary judgment, Holloway must show "a conflict in substantial evidence" on the question of whether the employer would not have taken the action "but for" the protected activity.[59]

---

[55] *McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

[56] 411 U.S. 792, 802, (1973).

[57] *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007) (internal citation omitted).

[58] *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 343 (2013).

[59] *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996) (internal quotation marks omitted).

### 1. *Appellant failed to show that he engaged in protected activity.*

First, the record shows that Appellant did not engage in protected activity. While he alleges that he complained to Will Morgan about racial discrimination on several occasions, he provides no evidence regarding the context, substance and gravity of his complaints that would create an inference of protected activity. His allegations only consist of self-serving, unsubstantiated complaints about how other employees were treated, and his subjective opinion about whether he should have continued to sign the waste manifests is merely his disagreement about internal processes, not an indictment about treatment or conditions that violate federal law.

That said, P&G proffered evidence that Appellant did not engage in any protected activity.[60] Appellant's lack of competent evidence thus fails in light of evidence contrary to his naked assertions unsupported by the evidence.

### 2. *Appellant failed to establish significant record evidence to advance his retaliation claim.*

Even if Appellant could somehow establish that he engaged in protected activity, the District Court still correctly held that he failed to provide sufficient evidence to advance his retaliation claim. Simply put, Appellant failed to establish that he would not have been terminated "but for" his complaints. As the District Court noted, Appellant must show "*significant record evidence*" to establish pretext in supporting his retaliation claims. Such evidence could have consisted of

---

[60] ROA.178-179. (Declaration of Will Morgan).

deposition testimony from decision-makers or documentary evidence from the investigations Appellant alleged were discriminatory, but he failed to provide any semblance of such information. Instead, he simply asked the Court to *assume* that P&G retaliated against him solely because of the proximity of his alleged complaints.[61] He provides no other information about the substance and context of his alleged complaints that would allow a fact finder to determine whether pretext exists.

For instance, he provides no documentary evidence or testimony suggesting that any relevant decision-makers knew of Appellant's alleged complaints to Will Morgan, or that human resources representatives based any employment decision on such statements. [62] He also fails to consider that he had been investigated for misconduct long before these discussions allegedly took place, and he offers no evidence to establish a temporal connection – aside from his belief in serendipitous timing – to support a retaliation claim.[63] Like his discrimination claim, Appellant's

---

[61] Appellant did not conduct any discovery to gather information that would provide any substance regarding pretext. At no point during the discovery period did Appellant serve any interrogatories, or document production requests and did not depose any P&G employee.

[62] Appellant's lack of any discovery is readily apparent here as he named no one in P&G's human resources department who plausibly knew of his complaints to Will Morgan *before* he was separated. In fact, Appellant did not contact human resources until December 6, 2022 – the date of his separation.

[63] Appellant also fails to provide any compelling Fifth Circuit authority suggesting that the proximity of an employee's complaints alone –*without significant record evidence* – is sufficient to survive summary judgment.

suspicions about retaliation are not significant record evidence. Appellant cannot escape summary judgment and the District Court's decision should be affirmed.

### D. The District Court Correctly Concluded That Appellant Failed to Establish a Viable Whistleblower Claim.

Similarly, the district court concluded that Appellant failed to mount sufficient evidence to advance his whistleblower claim. An employee seeking remedies under La. R.S. §23:967, must show that (1) his employer violated the law through a prohibited act or practice; (2) the employee advised the employer of the violation; (3) the employee refused to participate in the prohibited practice or threatened to disclose the practice; and (4) the employee was fired as a result of the refusal to participate in the unlawful practice or threat to disclose the practice.[64] As the District Court noted, Appellant offers no facts supporting these elements, much less anything creating a fact question for a jury to decide.

### 1. *Appellant failed to show any violation of Louisiana state law.*

Appellant's entire claim hinges on the misguided notion that P&G separated him for complaining about *"certain reporting irregularities with respect to federal and state offices of transportation and compliance with federal and state regulations."*[65] Appellant essentially argues – without any evidentiary or legal support – that some unconfirmed, undefined internal process that he complained of

---

[64] *See Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/03/04), 886 So.2d 1210, 1216.

[65] ROA.91. (Second Amended Complaint at Paragraph 4).

was somehow illegal. Even before this Court, he identifies no reports, investigations, decrees or processes indicating that P&G violated any state law. Louisiana law is clear that an employee's subjective belief that an illegal practice or procedure occurred is insufficient to establish a whistleblower claim. Instead, an employee must prove an *actual* violation of state law.[66]  Throughout this litigation, Appellant has only taken issue with not being able to sign off on waste manifests, which was allocated to someone else after P&G removed him from the BEC position. This follows the common notion that a disagreement over internal processes does not constitute a violation of state law in the same way a difference of opinion regarding a work-related issue does not support a wrongful termination claim.[67]

Simply put, Appellant failed to produce any competent summary judgment evidence that P&G actually violated Louisiana law. As such, his whistleblower claim fails, and the District Court's decision should be affirmed.

### 2. *Appellant did not advise P&G of any state law violation and did not refuse to participate in or threaten to disclose any illegal activity.*

Similarly, Appellant failed to advance sufficient facts showing that he advised his supervisors of any state (or federal) law violations or threatened to disclose the

---

[66] *Accardo v. La. Health Servs. & Indem. Co.*, 2005-2377 (La. App. 1 Cir. 6/21/06), 943 So.2d 381.

[67] *Garza v. Laredo Indep. Sch. Dist.*, 309 F. App'x 806 (5th Cir. 2009); *Wade v. Home Depot USA, Inc.*, 2016 U.S. Dist. LEXIS 992 (W.D. La. Jan. 5, 2016).

same to any authorities. He *only* alleged that he *"further reported irregularities with the execution of hazardous waste manifest forms."*[68] Thus, the District Court properly found that no fact questions existed on this element that would survive summary judgment.

Notably, Appellant did not advise Will Morgan, the Health, Safety & Environmental Leader, Bridget Anders, the Site Environmental Leader or any other supervisor of any purported illegal practices.[69] He did not call the company's anonymous reporting hotline or contact any outside regulatory agency to report *"irregularities with the execution of hazardous waste manifest forms"* or threaten to expose any misdeeds. As previously noted, Appellant *only* relies on the misguided notion that P&G somehow violated federal law by having someone else sign off on waste manifests after he was removed as the BEC.[70] Conclusory allegations cannot create fact questions about whether Appellant advised anyone of state (or federal) law violations, or whether he threatened to disclose any illegal activity.[71] Because of this, Appellant cannot satisfy this element of his whistleblower claim, and the District Court's decision should be affirmed.

---

[68] ROA. 91.  (Second Amended Complaint at Paragraph 4).

[69] ROA.178-179; ROA.202-203.  (Declaration of Will Morgan; Declaration of Bridget Anders).

[70] While not specifically alleged, Appellant appears to believe that no one else had the qualifications to sign off on the waste manifests. Yet he provides no information or explanation as why this was the case or why anyone else was not qualified to execute them.

[71] *See, e.g., Floyd v. Chilly's L.L.C.*, 2017 U.S. Dist. LEXIS 61353 (M.D. La. Apr. 21, 2017).

### 3.    *Appellant cannot show that P&G terminated his employment because of any refusal to participate or threats to disclose an illegal practice.*

Further, Appellant establishes no facts supporting a causal connection between his alleged complaints and his separation. Again, he provides no first-hand accounts or evidence that he refused to perform any specific duties that supported an illegal business practice. He only relies on the subjective belief that his separation was somehow related to him lamenting internal procedures. Appellant's unadorned, self-serving opinion is not competent summary judgment evidence. After all, P&G terminated his employment for his repeated failure to follow company policy. As such, Appellant cannot satisfy this element. His whistleblower claim fails and must be dismissed. The District Court's decision should not be disturbed.

## VI.    CONCLUSION

A *de novo* review of the record confirms the District Court's dismissal of Holloway's claims via summary judgment was appropriate.    Accordingly, P&G respectfully requests that the District Court's order granting summary judgment be affirmed and this appeal be dismissed.

Respectfully submitted,

*/s/ Michael B. Taylor*

Michael B. Taylor (LA Bar # 39081)
Michael.Taylor@jacksonlewis.com
Nicolas M. Cotten (LA Bar # 41200)
Nicolas.Cotten@jacksonlewis.com
**JACKSON LEWIS P.C.**
601 Poydras Street, Suite 1400
New Orleans, Louisiana 70130
Telephone:   (504) 208-1755
Facsimile:   (504) 208-1759

**COUNSEL FOR
DEFENDANT/APPELLEE,
THE PROCTER & GAMBLE
MANUFACTURING CO.**

## **CERTIFICATE OF SERVICE**

I certify that the foregoing **BRIEF OF APPELLEE** was filed electronically

with the Clerk of Court who will issue Notice of Docket Activity constituting service

of the filed document on the following Filing Users on the 9th day of January,  2026:

Allison A. Jones
DOWNER, JONES, MARINO & WILHITE
401 Market Street, Suite 1250
Shreveport, Louisiana 71101

 /s/ *Michael B. Taylor*
Michael B. Taylor
**JACKSON LEWIS P.C.**
Counsel for Defendant-Appellee,
The Procter & Gamble Manufacturing Co.
Dated:  January 9, 2026

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS</u>

1.      This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) this document contains 5,245 words.

2.      This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365, Version 2510 in 14-point Times New Roman.

Respectfully submitted,

/s/ *Michael B. Taylor*
Michael B. Taylor
**JACKSON LEWIS P.C.**
Counsel for Defendant-Appellee,
The Procter & Gamble Manufacturing Co.
Dated:  January 9, 2026

4924-5082-8163, v. 3

26